LAW 553-IL-ARB-e 8/22

## RETAIL INSTALLMENT CONTRACT - SIMPLE FINANCE CHARGE
### (WITH ARBITRATION PROVISION)

Contract Number: 25504806

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| LUIS PERALES<br>5245 S KOLIN #3<br>CHICAGO, IL COOK, 60632<br>Cell: N/A<br>Email: LOUPERALES@GMAIL.COM | N/A<br><br><br>Cell: N/A<br>Email: N/A | ETTLESON HYUNDAI, LLC<br>5631 S LA GRANGE RD<br>COUNTRYSIDE, IL 60525 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit for the deferred payment price under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. If any amount remains unpaid fifteen days after the final payment due date, we will assess finance charges on the unpaid balance at the Annual Percentage Rate shown in the Truth-in-Lending Disclosures. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2019 | HYUNDAI TUCSON | 52,957 | KM8J3CAL3KU020482 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural  ☐ N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 3,269.00 is |
|---|---|---|---|---|
| 16.20 % | $ 13,483.40 | $ 23,233.72 | $ 36,717.12 | $ 39,986.12 |

**Returned Payment Charge:** If any check or other draft you give us is dishonored, or any electronic payment is returned unpaid, you will pay us a charge of $25 or, at our option, an amount in excess of $25 for our costs and expenses, including reasonable attorney's fees incurred in collection of the check or draft. We will make written demand on you if we elect to pursue a nonlitigated collection action against you for our costs and expenses in excess of $25.

**Your Payment Schedule Will Be:** (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 509.96 | Monthly beginning 01/22/2023 |
| One Final Payment Of | $ N/A | On N/A |
| N/A | | |

**APPLICABLE LAW**
Federal law and the law of the state of Illinois apply to this contract.

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this insurance is $** N/A and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of $ 10 or 5% of the part of the payment that is late, whichever is greater.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about non-payment, default, any required repayment in full before the scheduled date and security interest.

### FOR USED VEHICLES ONLY
**Illinois law requires that this vehicle will be free of a defect in a power train component for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. "Power train component" means the engine block, head, all internal engine parts, oil pan and gaskets, water pump, intake manifold, transmission, and all internal transmission parts, torque converter, drive shaft, universal joints, rear axle and all rear axle internal parts, and rear wheel bearings. You (the consumer) will have to pay up to $100 for each of the first 2 repairs if the warranty is violated.**
**ATTENTION CONSUMER: SIGN HERE ONLY IF THE SELLER HAS TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM OR PROBLEMS AND YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:**
**ATENCIÓN CONSUMIDOR: FIRME AQUÍ SOLAMENTE SI EL VENDEDOR LE HA DICHO QUE EL VEHÍCULO TIENE EL/LOS SIGUIENTE(S) PROBLEMA(S) Y USTED ESTÁ DE ACUERDO EN COMPRAR EL VEHÍCULO SEGÚN ESTOS TÉRMINOS:**

1. N/A    2. N/A    3. N/A

X _(signature)_  12/08/2022    X N/A    N/A
**Buyer Signs**  **(Date)**    **Co-Buyer Signs**    **(Date)**

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _(signature)_    Co-Buyer Signs X N/A

*This is not the Authoritative Copy.*

*Customer Copy*

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including $ 1,739.80 sales tax) $ 22,248.80 (1)

2. Total Downpayment =
   Trade-In 2017 HYUNDAI ELANTRA
   (Year) (Make) (Model)

   | | |
   |---|---|
   | Gross Trade-In Allowance | $ 400.00 |
   | Less Pay Off Made By Seller to HYUNDAI MOTOR FINANCE | $ 2,331.00 |
   | Equals Net Trade In | $ -1,931.00 |
   | + Cash | $ 5,200.00 |
   | + Other N/A | $ N/A |
   | + Other N/A | $ N/A |
   | + Other N/A | $ N/A |
   | (If total downpayment is negative, enter "0" and see 4K below) | $ 3,269.00 (2) |

3. Unpaid Balance of Cash Price (1 minus 2) $ 18,979.80 (3)

4. Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts):

   A. Cost of Optional Credit Insurance Paid to Insurance Company or Companies.
   Life $ N/A Term N/A
   Disability $ N/A Term N/A     $ N/A

   B. Vendor's Single Interest Insurance Paid to Insurance Company $ N/A
   C. Other Optional Insurance Paid to Insurance Company or Companies $ N/A
   D. Optional Gap Contract $ 900.00
   E. Official Fees Paid to Government Agencies
   to STATE for COUNTY FEE $ 15.00
   to STATE for COUNTY TAX $ 204.68
   to N/A for N/A $ N/A
   F. Government Taxes Not Included in Cash Price $ N/A
   G. Government License and/or Registration Fees
   N/A
   REGISTRATION FEE $ 25.00
   H. Optional ERT Fee Paid To DEALER $ 35.00
   I. Government Certificate of Title Fees $ 155.00
   J. To Seller for Documentary Fee $ 324.24

   DOCUMENTARY FEE. A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2020, WAS $300. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $300, WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.

   K. Other Charges (Seller must identify who is paid and describe purpose)
   to N/A for Prior Credit or Lease Balance $ N/A
   to REVOLOS for SERVICE CONTRACT $ 2,595.00
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A

   Total Other Charges and Amounts Paid to Others on Your Behalf $ 4,253.92 (4)

5. Amount Financed (3 + 4) $ 23,233.72 (5)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before _____N/A_____ , Year __N/A__ . SELLER'S INITIALS __N/A__

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term _____72_____ Mos.     PARTNERS ALLIANCE
                              Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X _[signature]_

---

**INSURANCE. YOU MAY BUY THE PHYSICAL DAMAGE INSURANCE THIS CONTRACT REQUIRES FROM ANYONE YOU CHOOSE WHO IS ACCEPTABLE TO US.** You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us.

You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is checked on page 1.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**
**Optional Credit Insurance**
☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
Premium:
Credit Life $ N/A
Credit Disability $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

**CREDIT LIFE INSURANCE AND CREDIT DISABILITY INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT.** Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**
☐ _____N/A_____    _N/A_
Type of Insurance    Term
Premium $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

☐ _____N/A_____    _N/A_
Type of Insurance    Term
Premium $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the optional credit insurance and the other insurance checked above.

X _N/A_____    _N/A_____
Buyer Signature         Date
X _N/A_____    _N/A_____
Co-Buyer Signature      Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

You understand that Seller or its affiliates, or any holder of the contract or its affiliates, may receive consideration or something of value in connection with the sale of insurance purchased with this retail installment contract.

This is not the Authoritative Copy.

**OTHER IMPORTANT AGREEMENTS**

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   Fifteen days after the final installment is due as originally scheduled or deferred, we will compute and charge interest on any balance remaining unpaid, including any unpaid default charges or deferment charges, at the Annual Percentage Rate shown on page 1 of this contract.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
   You give us a security interest in:
   - The vehicle and all parts or goods put on it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service, or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. You agree to name us on your insurance policy as loss payee. The insurance must cover our interest in the vehicle. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   **Unless you provide us with evidence of the insurance coverage required by this contract, we may buy insurance at your expense to protect our interests in the vehicle. This insurance may, but need not, protect your interests. The coverage that we buy may not pay any claim that you make or any claim that is made against you in connection with the vehicle. You may later cancel any insurance we buy, but only after providing us with evidence that you have obtained insurance as required by this contract. If we buy insurance for the vehicle, you will be responsible for the costs of that insurance, including finance charges and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. We may add the costs of the insurance to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.**
   If we buy insurance, the charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the rate we are charging when we buy the insurance.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once subject to any right the law gives you to reinstate this contract.
   Default means:
   - You do not pay any payment on time;
   - You give false, incomplete, or misleading information during credit application;
   - You start a proceeding in bankruptcy or one is started against you or your property; or
   - You break any agreements in this contract.

   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay our reasonable attorney's fee as the law allows. If a judgment is entered against you, you will pay any court costs the court awards us.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, in many situations, the law gives you the right to pay to get it back. We will tell you what you have to do to get the vehicle back.
   f. **We will sell the vehicle if you do not get it back.** If you do not do what is required to get the vehicle back, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
   **If the vehicle you purchased is a new vehicle, unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or fitness for a particular purpose.**
   **If the vehicle you purchased is a used vehicle, unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no express warranties on the vehicle, and there will be no implied warranties of fitness for a particular purpose. The vehicle is subject to an implied warranty of merchantability, but only to the extent required by Illinois law. The implied warranty of merchantability expires at midnight of the 15th calendar day after delivery of the vehicle or until the vehicle is driven 500 miles after delivery, whichever is earlier. This implied warranty of merchantability does not extend to damage that occurs after the sale that results from: (1) off-road use; (2) racing; (3) towing; (4) abuse; (5) misuse; (6) neglect; (7) failure to perform regular maintenance; and (8) failure to maintain adequate oil, coolant, and other required fluids or lubricants.**
   The above provisions do not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
   **Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

6. **SERVICING AND COLLECTION CONTACTS**
   In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.
   You agree that you will, within a reasonable time, notify us of any change in your contact information.

7. **NEGATIVE CREDIT REPORT NOTICE**
   **We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.



NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM: (1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY. (2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

This is not the Authoritative Copy.

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator only on an individual basis and not as a plaintiff in a collective or representative action, or a class representative or member of a class on any class claim. The arbitrator may not preside over a consolidated, representative, class, collective, injunctive, or private attorney general action. You expressly waive any right you may have to arbitrate a consolidated, representative, class, collective, injunctive, or private attorney general action. You or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this transaction was originated. We will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law or the rules of the chosen arbitration organization require us to pay more. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee over $5,000 in accordance with the rules and procedures of the chosen arbitration organization. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate any related or unrelated claims by filing any action in small claims court, or by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual or statutory public injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. You agree that you expressly waive any right you may have for a claim or dispute to be resolved on a class basis in court or in arbitration. If a court or arbitrator finds that this class arbitration waiver is unenforceable for any reason with respect to a claim or dispute in which class allegations have been made, the rest of this Arbitration Provision shall also be unenforceable.

This is not the Authoritative Copy.

Customer Copy

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business use.
If a payment is not received in full within ___N/A___ days after it is due, you will pay a late charge of $ __N/A__ or __N/A__ % of the part of the payment that is late, whichever is less.
If this box is not checked, the late charge in the "Federal Truth-In-Lending Disclosures" still applies.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**DISCLOSURE OF 36% RATE CAP**
A retailer shall not contract for or receive charges exceeding a 36% annual percentage rate on the unpaid balance of the amount financed for a retail installment contract, as calculated under the Illinois Predatory Loan Prevention Act (PLPA APR).
Any retail installment contract with a PLPA APR over 36% is null and void, such that no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the retail installment contract.
The annual percentage rate disclosed in any retail installment contract may be lower than the PLPA APR.

X _[signature]_                                              X N/A
**Buyer Signature**                                         **Co-Buyer Signature (If Applicable)**

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.  Buyer Signs X _[signature]_   Co-Buyer Signs X N/A
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See the rest of this contract for other important agreements.

**Notice to the buyer.**
1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision on page 5, before signing below. You confirm that you received a completely filled-in copy when you signed it.

**RETAIL INSTALLMENT CONTRACT**

Buyer Signs X _[signature]_ Date 12/08/2022   Co-Buyer Signs X N/A   Date N/A
Buyer Printed Name LUIS PERALES                Co-Buyer Printed Name N/A
If the "business" use box is checked in "Primary Use for Which Purchased": Print Name N/A   Title N/A

**Co-Buyer** A co-buyer is a person who agrees to be primarily responsible for paying the entire debt and who (1) actually receives the vehicle or (2) is a parent or spouse of the buyer, or (3) will be listed as an owner of the vehicle's title. By signing above, the co-buyer confirms that the co-buyer will actually receive possession of the vehicle or will use it, or that the co-buyer is a parent or spouse of the buyer, or will be listed as an owner on the vehicle's title.

**Guarantor** A guarantor is a person who may be responsible for paying the entire debt if we cannot collect the amount owed from the buyer and any co-buyer.
**Guarantor Signs** X N/A   Date N/A   Address N/A
I hereby guarantee the collection of the above described amount upon failure of the seller named herein to collect said amount from the buyer named herein. I also consent to the Creditor having a security interest in the vehicle.

**Other Owners** An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this Contract.
**Other Owner Signs** X N/A   Date N/A   Address N/A

Seller signs ETTLESON HYUNDAI, LLC    By X _[signature]_    Title Finance Director

# NO PUBLIC LIABILITY INSURANCE ISSUED WITH THIS TRANSACTION



**FORM NO. 553-IL-ARB-e** (REV. 8/22)
©2022 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

LAW 553-IL-ARB-e 8/22 v1   Page 6 of 6

**GLOBAL LENDING SERVICES**

## Contract Assignment

(To be physically attached to Retail Installment Contracts)

For value received, this assignment is attached to and expressly made part of a motor vehicle sale by and between: ETTLESON HYUNDAI, LLC (as Dealer/Seller) of COUNTRYSIDE, IL (City, State) and LUIS PERALES (as Buyer/Buyers) of CHICAGO, IL (City, State)

Dated 12/08/2022 securing the vehicle described in the Retail Installment Contract (the "Contract").

VIN: KM8J3CAL3KU020482

Dealer/Seller hereby expressly sells, assigns, and transfers all rights, title and interest to said Contract to:

**Global Lending Services LLC**
**1200 Brookfield Blvd, Suite 300**
**Greenville SC 29607**

This includes any security interest in the motor vehicle purchased by the terms of the Contract and any and all accessions, attachments, accessories and equipment (together, the "Property") and any proceeds of the Property, and all rights, title and interest to any insurance policies or insurance proceeds purchased, endorsed, or obtained under the terms of the Contract to Global Lending Services ("GLS"), its successors and assigns.

Except as specifically provided in the Dealer Agreement between Dealer and GLS, the sale, transfer and assignment of the contract shall be without recourse.

This assignment supersedes any assignment to another party that may appear on the Contract. This Assignment is made subject to the terms of the Dealer Agreement entered into between the undersigned and GLS, the terms and conditions are incorporated herein by reference such that a violation of this assignment will be deemed a material breach of the Dealer Agreement pursuant to Sections 4 and 11 and trigger any and all rights and remedies associated therewith.

All warranties are made to induce us to purchase the contract. If there is a breach of any warranties or if Buyer has any defenses against Dealer and asserts them against us Dealer will demand purchase of this contract from us for the remaining unpaid balance plus all losses and expenses GLS has paid or incurred in connection with the contract. If GLS sustains any such losses or damage by reason of any claim or defense Buyer has against Dealer and asserts against us, Dealer will indemnify us and hold us harmless from all loss and damage GLS may sustain because of such claim or defense. This includes our reasonable attorney's fees and other expenses.

Dealer waives all demands and notices of default and any other notices otherwise required by law. Dealer agrees that GLS, without notice to Dealer may release, extend, vary or modify any obligations of Buyer's or any other obligor or any rights against Buyers or any obligor without affecting any of our obligations under this agreement. No waiver by us or any default or misrepresentation shall be effective unless in writing or operate as a waiver of any default or misrepresentation of the same default or misrepresentation on a future occasion.

Dealer/Seller: ETTLESON HYUNDAI, LLC

Signed: _[signature]_

Date: 12/08/2022

This is not the Authoritative Copy. Customer Copy

Contract Number / Número de contrato  25504806

Date / Fecha  12/08/2022

The information on this form is part of your Retail Installment Contract.

# DISCLOSURE OF 36% RATE CAP

**A retailer shall not contract for or receive charges exceeding a 36% annual percentage rate on the unpaid balance of the amount financed for a retail installment contract, as calculated under the Illinois Predatory Loan Prevention Act (PLPA APR).**

**Any retail installment contract with a PLPA APR over 36% is null and void, such that no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the retail installment contract.**

**The annual percentage rate disclosed in any retail installment contract may be lower than the PLPA APR.**

La información contenida en este formulario forma parte de su Contrato de Financiación a plazos.

# DIVULGACIÓN DE LA TASA MÁXIMA DEL 36%

**Un minorista no contratará ni recibirá cargos que superen una tasa de porcentaje anual del 36% sobre el saldo no pagado de la cantidad financiada para un contrato de venta a plazos al por menor, según el cálculo de la Ley de Prevención de Préstamos Predatorios de Illinois (PLPA APR).**

**Cualquier contrato de venta a plazos al por menor con una tasa de porcentaje anual (APR) de la PLPA superior al 36% es nulo y sin efecto, de modo que ninguna persona o entidad tendrá derecho a cobrar, intentar cobrar, recibir o retener ningún capital, tasa, interés o cargo relacionado con el contrato de venta a plazos al por menor.**

**La tasa anual equivalente que figura en cualquier contrato de venta a plazos puede ser inferior a la tasa de porcentaje anual (APR) de la PLPA.**

*[signature]*

Buyer / Firma del comprador

N/A

Co-Buyer / Firma del comprador solidario

This is not the Authoritative Copy.

Customer Copy

LAW® FORM NO. LAWIL-RATECAP_e (Rev. 8/22)
© 2022 The Reynolds and Reynolds Company

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.